## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

IRENE BLEA,

      Plaintiff/Counter-Defendant,

vs.                                              No. CIV 03-0770 JC/RHS

STANDARD INSURANCE
COMPANY,

      Defendant/Counter-Claimant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on *Defendant's Motion for Summary Judgment and Memorandum in Support*, filed March 8, 2004 (*Doc. 13*); *Plaintiff's Motion to Strike the Declaration of Darci Eiselle*, filed March 26, 2004 (*Doc. 21*); *Defendant's Motion to Dismiss and/or for Summary Judgment on Second Claim for Declaratory Judgment and Brief in Support*, filed May 28, 2004 (*Doc. 34*); *Plaintiff's Motion and Memorandum for Dismissal of Defendant's Counterclaims*, filed May 28, 2004 (*Doc. 36*); *Plaintiff's Motion and Memorandum for Summary Judgment on Her Declaratory Judgment Regarding the Mental Disorder Limitation of Standard Insurance Policy*, filed May 28, 2004 (*Doc. 37*); and *Plaintiff's Motion & Memorandum for Summary Judgment on Her Declaratory Judgment Regarding the 10/1/06* [sic] *Unnumbered Amendment*, filed June 3, 2004 (*Doc. 39*). The Court has considered the motions, the parties' submissions, the relevant authority, and entertained oral arguments in a hearing on September 29, 2004. For the reasons that follow, the Court will GRANT *Defendant's Motion for Summary Judgment* and DENY all remaining motions as MOOT.

## I.   <u>Background</u>

The relevant, undisputed facts in this matter are summarized as follows. Plaintiff was employed by California State University ("the University") in Los Angeles, California from 1993-1996. During that time, she served as a teacher, administrator, Full Professor, and Chairperson for Chicano Studies. On or about June 17, 1996, while passing by a drinking fountain on the University campus, Plaintiff slipped and fell to the floor. After the fall, she was unable to get up alone and some students assisted her to her feet. While walking away, Plaintiff slipped and fell a second time. Plaintiff completed her work day, though by day's end she was unable to walk. Plaintiff was subsequently diagnosed with a coccyx and pelvic muscle strain, a dislocated shoulder and a tear in the right rotator cuff. In 1997, Plaintiff underwent both arthroscopy and acromionectomy of the right shoulder. Thereafter, Plaintiff was diagnosed with fibromyalgia.

Plaintiff has also been diagnosed with depression and anxiety disorder. The diagnoses of such afflictions do not entirely post-date her physical injury of June 1996. On February 8, 1996, Plaintiff was treated by Dr. Mercedes Garcia, a psychiatrist, for depression and anxiety. Plaintiff reported to Dr. Garcia that she had previously received therapy and had taken Prozac for approximately one year in 1995. Plaintiff also indicated to Dr. Garcia that she received prior therapy for approximately two years, related to her flashbacks of childhood abuse. Throughout 1996 and 1997, Dr. Garcia treated Plaintiff with Zoloft, Paxil and Xanax. Also, on March 18, 1996, Dr. Phillip B. Leidy diagnosed Plaintiff with moderate depression and unspecified personality disorder having begun in October of 1995. Dr. Leidy also noted that Plaintiff was treated with outpatient therapy for job-related stress and depression for nine months in 1995.

On July 11, 1996, Plaintiff was treated for depression and irritability and was taking Zoloft.

2

On October 17, 1996, Dr. Karen Williams examined Plaintiff on behalf of the California State Compensation Insurance Fund ("CSCIF"). Dr. Williams assessed a "work-related psychiatric injury" having begun in March of 1995 and worsened as a result of Plaintiff's fall in June of 1996. Dr. Williams noted that Plaintiff was "frequently tearful, disoriented, rambling, and incoherent," and that Plaintiff was crying, depressed, and feeling overwhelmed. Psychological tests in October of 1996 indicated that Plaintiff was depressed, had cognitive confusion and impaired long-term memory, concentration and thought. At that time, Plaintiff was diagnosed with major depression and advised to continue taking antidepressants and undergoing psychotherapy.

On September 15, 1997, Dr. B.K. Misto, an orthopedic surgeon, noted that Plaintiff had suffered an anxiety attack. On October 27, 1997, Dr. Leidy advised the CSCIF that Plaintiff suffered a major setback as a result of the physical and emotional trauma associated with her shoulder surgery. By letter dated January 12, 1998, Plaintiff herself advised the CSCIF that she had become "severely depressed, overweight, and even suicidal because of the pain and lack of more holistic treatment" of both her physical and mental symptoms. Defendant's Response to Plaintiff's Motion for Summary Judgment on Mental Disorder Limitation and Brief in Support, Ex. 7 at 329. By letter dated February 9, 1998, Dr. Leidy advised the CSCIF that Plaintiff was continuing treatment on a weekly basis due to worsening of her depression and psychological deterioration. *Id.*, Ex. 8. Dr. Leidy further advised that the treatment and psychiatric medication Plaintiff was receiving at that time was necessitated by her industrial accident. *Id.* On April 17, 1998, Dr. Gilbert Gefland wrote a letter to Dr. Misto after seeing Plaintiff. Dr. Gefland's impressions were "1. Chronic pain syndrome with features of fibromyalgia; 2. Depression, and 3. Status post right shoulder surgery for impingement syndrome and acromionectomy." *Id.*, Ex. 9. Dr. Gefland also noted indications of a "strong underlying

depressive component to [Plaintiff's] symptom complex" and that "without doubt her antidepressants and continued psychiatric management is [sic] paramount." *Id.* On May 5, 1998, Dr. Misto diagnosed Plaintiff with chronic pain syndrome with features of fibromyalgia and depression, noting that Plaintiff was severely depressed and having anxiety attacks. *Id.*, Ex. 10 at 490, 492. On June 8, 1998, Dr. Leidy noted good progress but continued depression because of chronic pain and fibromyalgia. On July 13, 1998, Dr. Leidy again noted continued depression and anxiety "precipitated by the uncertainty and precariousness of her day-to-day functioning and future." *Id.*, Ex. 12. On August 10, 1998, Dr. Leidy noted continued depression and anxiety disturbing Plaintiff's sleep and daily functioning. *Id.*, Ex. 13. Similar diagnoses of combined physical pain and mental health problems continued, including the addition of post-traumatic stress disorder as diagnosed by Dr. Jack Ellis on June 30, 1999 and Dr. Lewis Geiwitz on July 7, 1999.

Defendant paid disability benefits to Plaintiff for two years pursuant to Group Long-Term Disability Policy 603267-B ("the Policy"). On January 21, 2000, Defendant applied the Policy's two-year "Mental Disorder limitation" and ceased payment of benefits to Plaintiff. Plaintiff filed this Complaint on July 2, 2003 (*Doc. 1*) pursuant to 42 U.S.C. Section 1332. Plaintiff seeks declaratory judgment that the term "Mental Disorder" in the Policy is ambiguous and, as a result, the limitation was wrongly applied to Plaintiff. Defendant filed a counterclaim on August 12, 2003 (*Doc. 3*), seeking declaratory judgment that the Policy is unambiguous and that the Mental Disorder limitation was properly applied. Excessive briefing followed. The Court then heard oral arguments on September 29, 2004 and determined that a trial is unnecessary, as all material information is before the Court, the sole question is one of law, and interpretation of a written instrument is essentially a judicial function.

II.    **Discussion**

The parties agree that because they are before the Court seeking a determination of whether ambiguity exists in a contract, California state substantive law should govern this case.  Indeed, as a federal court sitting in this diversity action, the Court has a duty to ascertain and apply California state law in an attempt to reach the same result a California state court would reach.  *Perlmutter v. U.S. Gypsum Co.*, 54 F.3d 659, 662 (10th Cir. 1995).  That said, it is settled that exclusions or limitations in a policy are strictly construed against the insurer, liberally interpreted in favor of the insured and all ambiguities are resolved against the carrier.  *Delgado v. Heritage Life Ins. Co.*, 157 Cal. App. 3d 262, 271 (1984); *Jones v. Crown Life Ins. Co.*, 86 Cal. App. 3d 630, 639 (1978).  It is equally settled, however, that where the meaning of the contract is clear, it will be given effect.  *Meyers v. Guarantee Sav. and Loan Assn.*, 79 Cal. App. 3d 307, 312 (1978).

Absent any California Supreme Court case law on point, the Court looks to lower California court decisions for guidance and finds an appellate court opinion particularly instructive.  In *Equitable Life Ass. Soc. of the U.S. v. Berry*, 260 Cal. Rptr. 819, 824 (Ct. App. 1989), the court considered whether a policy exclusion for "mental or nervous disorders" was ambiguous and held that, from a layman's perspective, it was not.[1]  *Id.*  In that case, plaintiff was totally disabled from his occupation with a diagnosis of "manic-depressive illness" and he challenged as ambiguous a group LTD policy provision that read, "Disabilities Not Covered:  Long Term Disability Benefits are not provided for:

---

[1]Arguing that *Berry* is distinguishable from the case at hand, Plaintiff urges the Court to consider a line of cases from the Ninth Circuit having found "mental disorder" ambiguous.  The Court disagrees, finding *Berry* both germane and persuasive insofar as it represents the current state of California law.

Mental or nervous disorders, alcoholism or use of hallucinogenic drugs, except while confined to an institution specializing in the care of such disorders." *Id.* at 821. Plaintiff in *Berry* argued that the language of the policy was ambiguous and lent itself to the construction that the exclusion applied only to disabilities having a functional etiology, where his was instead an "organic" disease caused by a chemical imbalance. The *Berry* court found instead that "manifestation, not cause, is the yardstick" and that mental diseases were limited "regardless of whether the disability was caused by a chemical imbalance, a blow on the head, being frightened by a black cat, inability to cope or whatever." *Id.*

Here, the statutory language is remarkably similar to that which was the subject of the *Berry* suit and Plaintiff's arguments much akin to those made by the insured in that case. The policy at issue here states, "Payment of LTD Benefits is limited to 24 months for each period of disability caused or contributed to by a Mental Disorder...Mental Disorder means a mental, emotional, behavioral, or stress-related disorder[2]." Pl's Mot. for Summ. J., Ex. 1.    Defendant in this case made a

---

[2]On October 1, 1996 Defendant amended the policy language to include a more comprehensive definition of "mental disorder." Plaintiff refused to agree to Defendant's proffered Stipulation, filed July 7, 2004 (*Doc. 47*), which states that the amended language was not applied to Plaintiff's claim nor would it be in the future. Apparently, Plaintiff attributes significance to the existence of the amended language insofar as it might represent Defendant's acknowledgment of prior ambiguity. While the amendment has been the subject of extensive briefing, and the Court recognizes Defendant's argument regarding its evidentiary value, the Court finds the October 1, 1996 Amendment immaterial to the issue at hand given the fact that Plaintiff's claims under the contract were not governed by or subject to the amended language. For the same reasons, the Court finds *Plaintiff's Motion to Strike the Declaration of Darci Eiselle Attached to Defendant's Motion for Summary Judgment*, filed March 26, 2004 (*Doc. 21*) mooted insofar as Plaintiff contends that pursuant to Rule 56(e) of the Federal Rules of Civil Procedure, Ms. Eiselle's Declaration is flawed for lack of personal knowledge regarding the validity of the October 1, 1996 Amendment. The Court finds Eisele's knowledge of the Amendment immaterial to its determination and further finds that Eisele's personal knowledge regarding what constitutes a true and correct copy of the Policy issued and maintained by Defendant sufficient under the Rule. Therefore, *Plaintiff's Motion to Strike* will be denied.

determination--based on Plaintiff's multiple diagnoses and consideration of her occupation--that Plaintiff's disability was subject to the limitation because her physical condition of fibromyalgia was not independently preventing her from doing her sedentary job as professor.  Defendant found instead, and Plaintiff does not dispute, that Plaintiff's depression and anxiety at least contributed to her disability.  Applying a plain meaning interpretation to the Policy limitation and taking guidance from the *Berry* case, the Court must find, as a matter of law, that the Policy is unambiguous in its limitation on benefits for disabilities caused or contributed to by depression, anxiety and post-traumatic stress disorder.  This is so regardless of their origin, be it fibromyalgia alone or a combination of fibromyalgia and pre-existing conditions.  Hence, Plaintiff suffered from the type of disability falling squarely within the plain meaning of the Policy's two-year limitation clause.

### III.    Conclusion

For the foregoing reasons, the Court finds that the Policy at issue here is unambiguous as a matter of law and the two-year Mental Disorder limitation was properly applied to Plaintiff's claim.  Therefore, judgment is entered in favor of Defendants on Plaintiff's claims which are dismissed with prejudice and judgment is entered in favor of Defendants and against Plaintiff on Defendant's counterclaim.

Wherefore,

**IT IS ORDERED** that:

1. *Defendant's Motion for Summary Judgment and Memorandum in Support*, filed March 8, 2004 (*Doc. 13*) is GRANTED;

2. *Plaintiff's Motion to Strike the Declaration of Darci Eiselle*, filed March 26, 2004 (*Doc. 21*) is DENIED as MOOT;

*Defendant's Motion to Dismiss and/or for Summary Judgment on Second Claim for Declaratory Judgment and Brief in Support*, filed May 28, 2004 (*Doc. 34*) is DENIED as MOOT;

*Plaintiff's Motion and Memorandum for Dismissal of Defendant's Counterclaims*, filed May 28, 2004 (*Doc. 36*) is DENIED as MOOT;

*Plaintiff's Motion and Memorandum for Summary Judgment on Her Declaratory Judgment Regarding the Mental Disorder Limitation of Standard Insurance Policy*, filed May 28, 2004 (*Doc. 37*) is DENIED as MOOT;

and *Plaintiff's Motion & Memorandum for Summary Judgment on Her Declaratory Judgment Regarding the 10/1/06* [sic] *Unnumbered Amendment*, filed June 3, 2004 (*Doc. 39*) is DENIED as MOOT.

DATED October 12, 2004.

_____

SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:

     Michael Armstrong, Esq.
     Albuquerque, New Mexico

Counsel for Defendant:

     Jill Davenport, Esq.
     Figari & Davenport, L.L.P.
     Dallas, Texas

     Lorna M. Wiggins, Esq.
     Albuquerque, New Mexico